# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:21-cv-00133-MR
# [CRIMINAL CASE NO. 1:18-cr-00139-MR-WCM-1]

| | |
|---|---|
| ANTHONY RYAN MOORE-POWELL, ) ) Petitioner, ) ) vs. ) ) UNITED STATES OF AMERICA, ) ) Respondent. ) _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [CV Doc. 1].[1]

## I.   PROCEDURAL BACKGROUND

On September 27, 2018, Homeland Security Investigations (HIS) Special Agent Klarisa Zaffark, while operating in an undercover capacity, posted an online advertisement on a website intended to arrange sexual encounters between adults and children. [CR Doc. 33 at ¶ 12: Presentence

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 1:21-CV-00133-MR, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 1:18-CR-00139-MR-WCM-1.

Investigation Report (PSR)]. The ad purported to offer a boy, who was fictitious, available for sex in exchange for payment. In her undercover role, Agent Zaffark pretended to be the child's father. [Id.]. Agent Zaffark received responses from individuals who were seeking such an arrangement, including from Petitioner Anthony Moore-Powell ("Petitioner"). [Id. at ¶¶ 12-13]. Petitioner contacted Agent Zaffark and expressed his interest in paying for sex with the boy, who Petitioner believed to be eight years old. Over the next several weeks of communications, Petitioner agreed to pay $1,500.00 to have oral sex and anal intercourse with the 8-year-old boy over the course of a weekend. [Id. at ¶ 13].

To entice the boy into engaging in sex with him, Petitioner sent child pornography videos to Agent Zaffark that Petitioner wanted shown to the boy. Petitioner also requested that Agent Zaffark provide prescription muscle relaxers to the boy that Petitioner hoped would facilitate engaging in anal sex with him. [Id. at ¶ 14]. Petitioner also purchased a Power Ranger toy that he intended to give the child as a gift. Petitioner told Agent Zaffark that he would bring a Nintendo Switch handheld gaming system that Petitioner intended to give the boy to distract him while Petitioner was sexually assaulting him. [Id.].

On November 15, 2018, Petitioner flew from Chicago, Illinois to Asheville, North Carolina. He rented a car and drove to a local hotel and checked in. He then went to meet the individual he believed to be the child's father but was in fact an undercover agent. In this meeting, Petitioner gave the agent a $200 down payment for the agreement to engage in sex with the child. After the meeting, Petitioner drove back to his hotel to await delivery of the boy to his hotel room. Law enforcement then arrested Petitioner in the parking lot of the hotel. [Id. at ¶ 15]. Agents found the Power Ranger, the Nintendo Switch system, and $1,300.00 cash in Petitioner's rental car. [Id. at ¶ 16]. Agents also found several electronic devices in Petitioner's car, which contained depictions of sadomasochism involving prepubescent and pubescent males and females, including infants and toddlers, and over 30,000 "Torchat" dark web messages reflecting Petitioners desire to abuse prepubescent children. [Id. at ¶ 7].

On December 4, 2018, Petitioner was charged in an 11-count Bill of Indictment with one count of coercion and enticement in violation of 18 U.S.C. § 2422(b) (Count One); seven counts of distribution of child pornography by interstate commerce in violation of 18 U.S.C. § 2252A(a)(2)(A) (Counts Two through Eight); one count of traveling in interstate commerce for the purpose of illicit sexual conduct in violation of 18

U.S.C. § 2423(b) (Count Nine); one count of transporting child pornography by interstate commerce in violation of 18 U.S.C. § 2252A(a)(1) (Count Ten); and one count of possession and access with intent to view child pornography involving a prepubescent minor and a minor under 12 years of age in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Eleven). [CR Doc. 19: Bill of Indictment].

The parties entered a plea agreement pursuant to which Petitioner agreed to plead guilty to Count One and the Government agreed to dismiss Counts Two through Eleven of the Indictment. [CR Doc. 25 at ¶¶ 1-2: Plea Agreement]. In the plea agreement, Petitioner acknowledged the 10-year mandatory minimum sentence for Count One. [Id. at ¶ 5]. The parties agreed pursuant to Rule 11(c)(1)(B) to jointly recommend that the Court find a base offense level of 28, U.S.S.G. §2G2.1, and a two-level enhancement for the use of a computer or interactive computer service, U.S.S.G. §2G1.3(b)(3). [Id. at ¶ 8(a)]. The parties also agreed to retain their rights to argue other specific offense characteristics, enhancements, departures, and adjustments to the offense level. [Id. at ¶ 8(d)]. The parties also agreed that they could seek departures or variances from the applicable guidelines range, as permitted by law, at sentencing. [Id. at ¶ 8(e)]. As part of the plea, Petitioner waived his rights to contest his conviction and sentence in any

appeal or post-conviction proceeding, except for claims of ineffective assistance of counsel and prosecutorial misconduct. [Id. at ¶ 17]. Petitioner pleaded guilty in accordance with the plea agreement. [CR Doc. 27: Acceptance and Entry of Guilty Plea].

Before Petitioner's sentencing hearing, a probation officer prepared a PSR. [CR Doc. 33]. Consistent with the parties' Rule 11(c)(1)(B) agreement, the probation officer recommended a base offense level of 28 and a two-level enhancement for the use of a computer for enticement. [Id. at ¶¶ 22-23; see id. at ¶ 9]. The probation officer also recommended an eight-level enhancement because the offense involved a minor under the age of 12, U.S.S.G. §2G1.3(b)(5). [Id. at ¶ 24]. Finally, the probation officer recommended a three-level reduction for acceptance of responsibility, U.S.S.G. §3E1.1(a), (b), for a total offense level (TOL) of 35. [Id. at ¶¶ 31-33]. With a TOL of 35 and a criminal history category of I, the applicable guidelines imprisonment range was 168 to 210 months. [Id. at ¶ 55].

Neither party objected to the PSR. Petitioner, however, moved for a downward variance from the guidelines range. [CR Doc. 35]. Petitioner argued that the minor involved was fictitious and, but for the Agent's "decision to select an age that would increase the Total Offense Level by 8 levels," Petitioner's TOL would have been 27, yielding a guidelines range of

70 to 87 months' imprisonment. [Id. at 4]. Recognizing the mandatory minimum sentence of 10 years' imprisonment, Petitioner requested a downward variance allowing him to receive a sentence consistent with that minimum. [Id.]. In support of his motion, Petitioner presented the recidivism findings from a Psychological Evaluation of Petitioner performed by psychologist Ashley King, Ph.D., and submitted a copy of the full evaluation report to the Court. [Id.]. Petitioner provided, in pertinent part, as follows:

> Dr. King specifically found that [Petitioner's] score is similar to others who were categorized in the Above Average risk category for predicted sexual recidivism. It is important to note that his score was not considered in the "high" category for predicted sexual recidivism. Further, sexual recidivism decreases with age. At the age of 35, in nine years from now, his STATIC99-R score will decrease to a four with a reduced predicted sexual recidivism rate. At age 40, his STATIC99-R score would be a three corresponding to an "average" category [of] predicted sexual recidivism.

[Id. at 4]. Petitioner argued for downward variance to the mandatory minimum sentence based on what would be an average risk of sexual recidivism on release from prison, his lack of criminal history, and because he would have to register as a sex offender.[2] [Id. at 5].

---

[2] Of note, however, if Petitioner had been sentenced to 120 months in prison, he would have been approximately 37 years old on release, not 40. The Psychological Evaluation did not predict Petitioner's risk of recidivism at age 37. [See Doc. 35-1 at 11].

6

Before sentencing, the Government moved for a two-level downward departure to a TOL of 33 based on substantial assistance pursuant to U.S.S.G. §5K1.1. [CR Doc. 37]. The guidelines imprisonment range for a TOL of 33 and a criminal history category of I was 135 to 168 months. [See id. at 3].

Petitioner was sentenced on August 22, 2019. [CR Doc. 50: Sentencing Tr.]. The Court accepted the PSR as written, finding that the applicable guidelines range calls for a term of imprisonment between 168 to 210 months. [Id. at 10]. The Court granted the Government's motion for downward departure and operated from a TOL of 33 in sentencing Petitioner. [Id. at 10-11]. Petitioner's counsel argued consistent with his motion for a downward variance. [Id. at 12-16]. The Government thoroughly responded. [Id. at 17-21]. Relative to Petitioner's argument that Petitioner's TOL would have been 27 but for the Agent's decision to select an age under 12 for the fictitious boy victim, the Government made this age available to Petitioner and gave Petitioner the opportunity to select it. [Id. at 17]. Furthermore, based on the child pornography Petitioner possessed, which was primarily of infants and toddlers, Petitioner would have rejected an older child as outside of his age of interest. [Id.]. The Government advocated for a "at least" a 168-month sentence, citing the "heartbreaking" and "graphic"

7

relevant conduct, Petitioner's pedophilic disorder as described in the report, and the substance of Petitioner's communications with other like-minded individuals on the dark web in which he facilitated the rape of another small child and found humor in the possibility of such child being kidnapped, raped, and murdered. [Id. at 18-20].

The Court sentenced Petitioner to a term of imprisonment of 168 months and a lifetime term of supervised release. [Id. at 27, 33]. The Court stated its reasons for imposing this sentence as follows:

> There are several factors in the sentencing statute that the Court is required to take into account. Among those are the history and characteristics of the defendant. In that sense, the defendant presents a somewhat conflicting history and set of characteristics because, on the one hand, the defendant has been law-abiding with the exception of the events related to this particular matter and seemed to be someone who has conducted himself well in society.
>
> But, then, on the other hand, he presents himself with the history and characteristics of one who takes pleasure, and has taken pleasure for some extended period, in some of the most extreme forms of child abuse and viewing those extreme forms of child abuse on the internet.
>
> The statute also says that the Court should take into account the nature and circumstances of the offense and fashion a sentence that reflects the seriousness of the offense. Here the count of conviction isn't even related to all of the child pornography which would have come with a fairly

serious sentence all unto itself. Here the defendant undertook to move from being a passive viewer of extreme child abuse but actually undertook to act to become such an abuser, even to the point of traveling a great distance, being willing to pay a substantial amount of money in order to, himself, abuse a child in a most egregious way. Taking all of that into account is in some senses difficult to do.

Congress, in its wisdom, has said that under this particular statute that the least serious offense warrants a 120-month term of incarceration, and defense counsel has advocated that that is what should be imposed here as though these facts present the least egregious form of a violation under this statute. However, this does not present the least egregious form of a violation under this statute, particularly when I take into account the history and characteristics of the defendant and his use of this extensive collection of child pornography, and his extensive connection with similarly minded individuals on the internet, even with those who actually harm children, to encourage the harm of small children in such an egregious way. This is not the least serious form of a violation under this statute.

Defense counsel also has argued that it was mitigating in some respect that the defendant understood himself to be communicating with an adult rather than the child – rather than actually enticing the child. I do not see that as a mitigating factor. In fact, if anything, it is an aggravating factor because that is consciously participating in what the defendant understood to be the trafficking of a young child for sexual purposes. That is something that I see as a serious violation of the statute.

In addition to looking to the seriousness of the offense and the nature and circumstances of the offense, and even wanting to deter criminal conduct,

> I look to the psychological report that has been filed with the Court. That psychological report reflects that the defendant is one who certainly has a higher risk of re-offending than other defendants I have seen who have pleaded guilty under this statute, and I find that very troubling.
>
> The psychological report also reflects that the defendant exhibits no empathy for children. That's very troubling. Because one of the factors for sentencing under the statute is that the Court should fashion a sentence that protects the public from further crimes. That psychological report, in many respects, says that the longer the defendant is incarcerated the less likely he is to re-offend, but the shorter term that he is incarcerated the more likely he is to re-offend. That's very concerning, particularly in light of the argument that the defendant should receive the statutory mandatory minimum sentence.
>
> Quite candidly, under the facts of this case, I would have imposed a term of incarceration longer than the one that I imposed but for the government's motion for a downward departure. And I would have done that largely because of the seriousness of the offense as well as to protect the public from further acts on the part of the defendant. However, the defendant did provide the assistance to the government that he did, and I believe the defendant should be entitled to some reduction for that. I have included that in this overall sentencing calculus regarding the term of incarceration.

[CR Doc. 50 at 30-33]. Judgment on Petitioner's conviction was entered on August 26, 2019. [CR Doc. 40: Judgment]. Petitioner appealed his sentence, alleging a single claim of ineffective assistance of counsel. [CR

Doc. 42; see CR Doc. 51]. The Court of Appeals granted the Government's motion to dismiss Petitioner's appeal as barred the appellate waiver in the plea agreement. [CR Doc. 51].

On May 11, 2020, Petitioner timely filed the instant Section 2255 Motion to Vacate. [CV Doc. 1]. In his motion, Petitioner argues that he received ineffective assistance of counsel where his attorney assured him that most of the report on Petitioner's Psychological Evaluation would be redacted when submitted to the Court, "leaving only the statistical information that counsel desired to use for the sentencing hearing." [CV Doc. 1-1 at 1]. Petitioner claims that he realized the "very real detrimental effect of such a report being submitted" and he "was severely hesitant to admit it." [Id.]. Petitioner notes that the report "greatly exaggerated [his] level of recidivism and possibly took literally dreams [he] had involving a minor more than five years younger than [Petitioner] when [he] was twelve." Petitioner states that the "report did not exactly differentiate fantasy from reality leaving the choice to the reader."[3] [Id.]. Petitioner also argues that his attorney failed

---

[3] Of note, the Psychological Evaluation report provides that Petitioner admitted that "at around age 12 he engaged in sexual touching with [another minor], who was about age six." Petitioner stated that the touching was his idea, but the minor was "willing." Petitioner reported that this occurred multiple times over a two-year period. [CR Doc. 35-1 at 4]. Dr. King later stated in the report that, "it is unclear if this is actually true. It is not uncommon for sex offenders to report similar fantasies as if they actually happened." [Id. at 11].

11

to timely "share legal strategy and documents with [his] acting advisors," including his mother, who is a retired Chicago Police Officer, and his cousin, who was then a prosecutor for the City of Chicago, as instructed. Rather, counsel did not share the report until a few days before sentencing after it had already been submitted to the Court. [Id.]. Petitioner contends that "the Court found the evaluation as the primary basis to impose the maximum sentence proposed by the guideline range." [Id.]. Other than this bare claim, Petitioner does not state how he was prejudiced because of these alleged errors by counsel or show how his sentence would have been lower without the report. [See id. at 1-2].

For relief, Petitioner seeks appointment of new counsel and resentencing. [Id. at 13].

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that Petitioner's Motion to Vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526,

529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

13

A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Here, in his sole claim for relief, Petitioner's argues that his attorney should not have submitted the unredacted Psychological Evaluation report to the Court for sentencing and that his attorney should have provided the report to Petitioner's "acting advisors" earlier. Petitioner has plainly failed to support a claim of ineffective assistance.

In reaching its sentencing determination, the Court clearly considered many facts and circumstances of Petitioner's case. While the Court certainly reviewed the report and considered its findings, the Court also considered and based its sentence on many other relevant facts and factors. The report was one piece of a many-part puzzle and not the "primary basis" for the sentence, as claimed by Petitioner. The Court discussed several factors it deemed significant in fashioning Petitioner's sentence, including Petitioner's history and characteristics, including his prodigious collection of child pornography and his interest and pleasure in extreme forms of child abuse and viewing such abuse on the internet; Petitioner's transition from being a passive viewer of extreme child abuse to actually undertaking to participate in such abuse, even traveling a great distance and agreeing to pay a substantial amount of money to perpetrate it; and the egregiousness of Petitioner's case relative to the least serious form of a violation under the statute, which may warrant a 120-month sentence, concluding that

Petitioner's conduct and characteristics represented a serious violation of the statute. Finally, the Court looked to the Psychological Evaluation report and discussed the risk of recidivism relative to the length of a sentence. Of note, the Court did not mention Petitioner's report of either having engaged in sexual touching with a young boy when Petitioner was 12 years old or having dreamt about such an encounter. Moreover, without the Government's downward departure motion, the Court would have imposed an even longer term of incarceration "because of the seriousness of the offense as well as to protect the public from further acts" by Petitioner. [CR Doc. 50 at 33]. As such, even without the Psychological Evaluation report, the Court's analysis at sentencing easily supports the imposition of a 168-month sentence and Petitioner has made no showing that his sentence would have been less without the report.

In short, Petitioner has failed to demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for his attorney's alleged errors. Royal, 188 F.3d at 249. Absent a showing of prejudice, the Court need not consider the performance prong. Rhynes, 196 F.3d at 232. The Court will, therefore, deny and dismiss Petitioner's § 2255 motion to vacate.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate is denied and dismissed.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: June 7, 2021

Martin Reidinger
Chief United States District Judge